Make this as simple as you can. This is quite a conundrum, I understand. As a starting point, Your Honor, we'd like to agree with the government's 28-J letter. That'll simplify things a bit. Secondly, we'd like to correct our first reply brief, or second reply brief at page 6, which states in error that precedent in this case, matter of azure in 23-INN decision 693, was almost a year after the I.J.'s decision, immigration judge's decision. And finally, what we will try to accomplish today is to, first of all, have this panel understand that the Board committed legal error, which constituted an abuse of discretion in denying petitioner's motion to reopen. And secondly, to amend proceedings back to the Board of Immigration Appeals to provide the Board some guidance as to rule on whether or not the petitioner has served a 5-year sentence of imprisonment, which the Board has conveniently skirted when it got very excited about Brevia and dismissed the case, and in providing this guidance to further request that the Board remand proceedings again to the immigration judge to afford petitioner the opportunity to immigrate pursuant to matter of azure in and to adjust status with the 212C waiver premised upon his marriage to a U.S. citizen and two U.S. citizen children. The reopening is for what purpose? To apply to adjust status with the 212C waiver. And why didn't we apply to adjust yet? That goes with respect to the marriage that both men had together. Exactly right. Okay. And you might want to know why we didn't apply to adjust yet. And the answer is simply that the immigration judge said we're ineligible. We're ineligible because he served 5 years imprisonment. Notwithstanding that over a year of that was in pretrial civil psychiatric lockup preparing the petitioner to confront criminal charges when he was not yet able to do so. You look like you have a question. Well, I'm trying to understand if we don't agree with you on the computation of the 5 years. There's nothing we can do. But we would convince you, the petitioner would convince you that a careful review of Nevada revised statutes plus a review of the federal standards as to what constitutes imprisonment, a term of imprisonment served would compel this panel to find that imprisonment is not the same as confinement. It's not the same as Can we even reach that question? The BIA hasn't weighed in on it. Exactly. Therefore, remand is appropriate. To have them decide that in the first instance? You can de novo address it, deal with it, but give them the first bite of the apple, certainly. But they skirted it. They said, grab you, bye. But what would they decide it on? What is their expertise in deciding whether or not this 5 years, another civil commitment is part of 5 years? That's an excellent point, Your Honor. They're not an expert on Nevada state law. Then why are we remanding it to them to decide it in the first instance? Well, you can always provide instructions and have them follow these instructions and I'd like to suggest and would advocate that you do so. What's frustrating about your case is that the only point on which you appealed to the BIA was on the question of whether he had served for 5 years. The BIA ignores that ground, goes off on a ground that wasn't even briefed or appealed and on which the I.J. himself hadn't weighed in. It is the type of post hoc decision making that the APA abhors. And what's frustrating for the petitioner is expecting the BIA to at least address the issue on appeal and possibly then file a motion to reopen. The oddity of this case, though, is that the regulations were complied with to the letter. And the principles of doherty have been codified. So here we're worried about doherty and indefinite number of motions and taking on years and years and years of filing motions. And we've timely filed a motion to reopen and we filed it for a relief that was not explained to the petitioner because the judge found that it would be futile to do so. Let me ask you this. What does Ventura have to do with this? The Supreme Court's holding that we can't decide something that the BIA has to do with. Well, to curtly respond, I'm not sure Ventura necessarily dealt with de novo legal jurisdiction as far as circuit court demands are concerned. I found that Ventura dealt with factual issues and discretionary issues and said that the board has to be able to rule on facts not dealt with below as a matter of first impression before the circuit courts review such facts and exercise a discretion on those facts. This is a purely legal question. And this is a legal question having to do with Nevada State criminal law, nothing to do with the expertise of the Department of Homeland Security in this case. And it also flies in the face of preexisting legal precedent which found it where the board has found again and again pretrial civil detention or alternative civil detention cannot be ascribed as a prison sentence. Well, I assume that you wouldn't object if the board had come back and said, well, irrespective of what Nevada might count this as, we don't think this counts as five years. I assume that you wouldn't object to the BIA weighing in on that. Of course not. Why would we ever do that? Even though you might have characterized it as a purely legal question. So if you thought that you were going to get that kind of ruling from the board, I assume that you would be raising Ventura in capital letters. Well, the board has to address the issue as a matter of first impression to exhaust administrative remedies. It's the board's job. It's purely a question of law and that we can decide it. Indeed. I'm confused. Excuse me? I'm confused by your argument. Because if your argument is it's purely a question of law and that the board has no more expertise than anybody else, then it suggests that we have no reason to defer to the board and that we should just decide the question as to whether your client has served five years in imprisonment or not. I'm arguing both ways in the alternative. Okay. And I would certainly prefer that this panel rule as a matter of law on the issue because it is something outside the expertise of the board. But in any event, another troubling issue about this case is that the regulations involved were dealt with as if the Petitioner was submitted for the first – submitting for the first time previously unavailable evidence. The evidence already on the record would trigger the immigration judge to make all available relief – to inquire as to available relief and make such relief eligible. At page 427, there's the arresting officer's note, U.S. citizen wife. Page 393 of the administrative record, there's a G325A, U.S. citizen wife, showing a pre-era marriage. Form 191 at page 389, U.S. citizen wife. The record of deportable alien, U.S. citizen wife, mentions the kids too. The record of property assessment by which they found the guy and arrested him, Mr. and Mrs. Corpus, U.S. citizen wife, unless it's his sister, but the presence of U.S. citizen children would probably preclude that alternative understanding. The judge had every reason to investigate available relief, but – Mr. Gabrielsky. The Gabrielsky case, that should be – should have been addressed – Should have been addressed then and there. Okay, and so we just remand on that basis? That would be one issue, but in order to even address that issue, in order for it to be right, somebody's got to rule on the issue of the five-year prison sentence, because if this is a five-year prison sentence, he's going back to the Philippines. Why don't we remand that as well for them to decide that first? I mean, you know – Because you're better qualified. Why? Because you've been dealing – My head's spinning now. Why? My head's spinning now, and I can't stop it. This is – I shouldn't have set it for them to have their head spin a little bit first. Well, it really is something well-settled by BIA precedent to begin with. I don't understand why it's well-settled, because, I mean – let me ask you this question. Is there a difference between when a defendant is released early – in other words, given more than five years and is released early at a situation where a defendant is sentenced to more than five years but is given credit for time served or, you know, custody time? It's the difference between going to the store with cash and coupons. Coupons are not cash. And the government is basically trying to say that a prison sentence is credit for time served. Credit is credit. Time served is time served. If you sit in a prison environment for four hours, you're going to know the difference between time served in prison and time served in home confinement, time served in the Drug Rehabilitation Center, time served any other way but prison. The Congress set forth time served in prison. Five years time served. And confinement and other restrictions on liberty which are addressed in federal definitions dealing with a conviction and sentencing. Sentencing might involve confinement, might involve other restrictions on liberty, but it is not imprisonment time served in prison. It's just not. These are apples and oranges. It certainly makes a difference to your client. Nevada said that your client was going to get five years. And I assume that when Nevada says we're going to give you credit for whatever it was, the one or two years that you spent in the mental institution, that your client doesn't say, oh, no, Your Honor, there's a difference between time served in the mental institution and time served in jail. I'd like to serve the time served in jail just so I have the experience. Well, there's no guarantee, though, that the credit for time served is going to equate into a jail sentence anyway. Right. These are discretionary factors by the criminal judge. It's not what the judge could have done. It's what the judge, in fact, in this case, did. Right. This is not a categorical analysis. Nevada gave your client five years. It happened to give him credit for time he spent in the mental institution. Nevada gave my client three years and change and gave him credit for the mental institution. But isn't the whole thing about having the time served? That's my point exactly, Your Honor. But isn't the whole point about actually serving the time is because of the supposed dangerousness or seriousness of the crime? And so that's the reason why we've had this rule insofar as the five years is concerned. But in the situation where the judge in Nevada makes the determination, he wasn't he or she wasn't even considering that as an issue. So, therefore, we don't know whether or not had that judge known of this particular consequence, immigration consequence, that that judge would have given time served in that situation. We don't know. This is not a categorical analysis. This is just a factual analysis as to what time was served in prison. But in this case, the time served in the county lockup for a psychiatric evaluation was to prepare the man for trial. It had no punitive character. He was detained under an entirely different section of vaterized statutes. It had nothing to do with the Bureau of Prisons. It was the... Kagan. All right. Proceed, Your Honor. Excuse me. I think we get your point. I think we ought to hear from the government on this. Thank you. Thank you. May it please the Court, Arthur Reagan for the respondent. What do you want us to do with this case, counsel? Okay. Your Honor, under immigration law, the board is entitled to make, issue a decision on the law regardless of what the I.J. said. You could adopt and affirm the I.J. decision. If they did it correctly. Right.    Had the I.J. made that same decision, then the I.J. would have had an obligation to have advised him of his Gabrielski rights. Well, so he's trapped. He didn't... The I.J. made no findings on that, and therefore the I.J. had no reason to advise him of Gabrielski, of the 212C fix. So he goes before the board. He appeals on the five-year question. The BIA says, that's a hard question. Let's decide something different that nobody has briefed us on. And now the guy's stuck. Well, yes and no. This particular individual was married back in 1997. He had every opportunity to ask for adjustment of status. And, you know, in front of the I.J. I mean, he, as a right, he could have raised that in front of the I.J. and said, I've been married since 1997. Does the I.J. have an obligation to inform him of that? Well, if the I.J. knew or there was evidence on the record... Well, why wouldn't he? Appellant's counsel indicates that the record is replete with references to his situation. Well, I wouldn't call it replete. There are a few, in some of the documents, there are references. Yes, there are. But, you know, he is represented by counsel. He is entitled, you know, the I.J.'s... The advice is not only to the, you know, appellants are representing themselves in that situation, but also to their counsel. It's the rule. It doesn't matter if they're represented or not. Oh, yeah, but, I mean, if the immigration judge had evidence on, you know, that it was right in his face and he said, well, you're married, you know, do you know you're entitled to adjustment? There's another problem here. There's another very fundamental due process problem, counsel, and that is that Mr. Karpuz goes before the I.J. The I.J. says, you've got five years in jail, and so you're ineligible for anything else, irrespective of any other claims you might have or anything else I might rule on. You've got five years and you're barred. And he briefs that question to the BIA, and the BIA decides on entirely different grounds. He hasn't even had the opportunity to brief. He never got to say one word to the BIA about that because it wasn't relevant. Well, it is relevant, Your Honor, in that... It wasn't relevant at the time that he appealed it. Why would he brief something that the I.J. hadn't decided? You see, the BIA is deciding that you're not, that this is a comparable grounds. He never had the opportunity of briefing comparable grounds before the BIA. But at that point, he could have asked for reconsideration and asked to brief that issue. He didn't. Well, this, I mean, we're here now. He's never had a chance to have addressed a number of issues. Now, what is, I don't think that you are going to get a decision, I think it's highly unlikely that you are going to get a decision from this panel that says, that this, everything was just hunky-dory here. Well, I understand that, Your Honor. But, okay, but first of all, under Abebe, the board's interpretation has been adopted. That is, this particular individual is not entitled to relief. He's not entitled to 12C. Why? Because he's got a crime of violence as his ground for deportation. That's it. So if you remand on that issue... But nobody has ever decided that administratively. It was decided by administrative court that he's not entitled to, under Maddow-Blake and Maddow-Brieva, that he's not entitled to 12C relief. This court then said, that's hunky-dory. That is fine. So therefore, if this court now says, we want to remand to give this man an opportunity to brief that issue, it's moot. He is not entitled to relief. That's, I mean, at this point, there is nothing for him to brief. The board's decision is not, he hasn't shown that it's wrong. In fact, he hasn't contested it. As we point out in our brief, he has never contested the issue of, well, the way the board applied the counterpart of the statutory counterpart argument to me was wrong. Because it's not wrong. But the whole thing that's so frustrating about this counsel is, that if this had been done in a little order, your argument may work, but it's highly path-dependent. So that if the I.J. had made the same ruling that the BIA made here, then the I.J. would have triggered an I.J. duty to give him notice of his Gabrielski right. He can't cure it. But yes, okay, but Your Honor, again, even under Gabrielski, he's not entitled to relief because his ground of inadmissibility also qualifies as a CINT, as a crime involving moral turpitude. But he's never had an opportunity to raise this. He's never raised it. Nobody's ever decided that. I don't understand it. You may be right, counsel. It may be a great argument. But he's never had the opportunity of doing that. That's not the way we usually do things around here. If we try to do it, when we try to do something like that, we get told by the Supreme Court that it has to be decided by the I.J. Maybe not the Supreme Court. I would just point Your Honor to his own brief, and I think the matter of Gabrielski issue is in there, and he has briefed it. And I think it shows that he's not entitled to relief under a matter of Gabrielski. I mean, counsel, we're confident that you're an excellent attorney and your opinion will carry a great deal of sway with us. But usually we give an opportunity to an agency to do that. We don't just have to take your word for it. I understand that, Your Honor. I'm arguing mootness here. This issue has been briefed to the court, and if this case is remanded to the board on an issue already decided by the board correctly, the only thing you're giving him is an opportunity to brief a moot issue, a frivolous brief. That's my point, Your Honor. The mootness being what? Yes. That is, he's not entitled to 212c relief. That is, the board's decision that... Is that our case? I'm sorry, Your Honor. Let me... Okay. The board's first decision in this case was that there is no statutory counterpart to his particular crime in the admissibility ground. Therefore, because there is no statutory ground counterpart, he is not entitled to 212c relief because he's got a ground to portability, not inadmissibility. To get 212c relief, which is for only inadmissibility, you need to show statutory counterpart. This court adopted that analysis and said there's nothing wrong with it. Therefore, now, if you send it back to the board and say give him an opportunity to brief that issue, the board's just going to turn around and say we decided it correctly in the first place and citing you back to yourselves. What case are we referring to? I'm citing Abebe, Your Honor. Abebe? I'm sorry, 28 Jade, Abebe, which is a case that came out in July that upheld this exact analysis. You're talking about 493, 5th, 3rd? I'm sorry, Your Honor? 493, 5th, 3rd at 1092, right? Yes, Your Honor. Okay. That goes to the constitutionality of the requirement that there has to be a comparable ground of inadmissibility? Is that? It goes to a number of things. Yeah. One of which is, you know, impermissibly attractive, equal protection, but also is not related. But that's relevant here. Isn't that the? It was also, it was Matter Blake and Matter Brieva good law. Was it a correct interpretation? This Court gave Chevron deference to that interpretation, which is exactly what happened in this case based on Matter Blake. The Board decided in its very first decision on page 200 of the record, based on Matter Brieva, which was in this Court in July, said is good law, this man is not entitled to 212C relief. So now what you're saying is, well, this has never been briefed before the Board, so let's send it back. Does that decision depend upon a determination of the five-year? No. No, Your Honor. No, that's a wholly different issue, isn't it? That is a totally separate issue, but you don't get to the five-year issue unless you get a statutory counterpart issue. That is, he is being removed. I'm not sure that's right. Okay, Your Honor, this is, what he's asking for is 212C relief. 212C relief is only available to people who are in deportation proceedings being found deportable, is if they can show a statutory counterpart to a ground of inadmissibility under 1182. In Matter Brieva and Matter Blake, the Board said, here's our analysis, and then the Ninth Circuit and the BB said, that is the correct analysis, and adopted it, as well as, you know, many other circuits have adopted the same analysis other than the Second and Eighth. So at this point, he's not entitled to relief, so to actually go out and ask him to show five years, it doesn't matter if he can show five years, because he's not entitled. He doesn't have a statutory counterpart to show, to demonstrate that he's entitled to relief, because then he can go and say, and I'm entitled to it, because I also served less than five years. Am I making it clear, or are you kind of puzzled? Your Honor. Your argument is that the whole five-year question is an interesting question, will have to be resolved at some point, but it doesn't matter. He can't get there from here because of a BB. Because of a BB. That's right, Your Honor. And so there's nothing to remand at this point, because there's been actually an intervening, there's a subsequent event, which is our affirmation. And so a BB takes care of every case, because, okay. All the issues, which counsel, I'm sure, will concede. Okay. Subjects to this Court's questions? We'll hear the response to that now. Well, we mentioned Brieva, we mentioned Blake, whoops, we forgot Azzarine, a.k.a. Gabrielski, which looks not at grounds of removal, which include aggravated felonies, but also grounds of admissibility. Which don't include aggravated felonies, but include crimes involving moral turpitude, which then require 212C relief. We're back to eligibility for 212C relief premised upon him serving five years' imprisonment, or not. So the issue of Azzarine is what is compelling before this Court presently. The issue involving whether this man has served five years' imprisonment is what is compelling before this Court presently. It didn't, this Court took, you know, over jurisdiction, over criminal, state criminal statutes in Gerberding. That's my favorite to recall. I don't recall any others, but I've read them a number of times. Counsel, before we get to that, just walk me through why Abebe doesn't moot your request here. Because Abebe only addresses stand-alone 212C. That's where you're not necessarily trying to apply for 212C and adjustment, no, you're not looking at adjustment as that legal fiction where you're standing outside the United States confronting grounds of admissibility, as Gabrielski and Azzarine will teach us. Rather, Abebe looks at all the many lines of cases in which one is applying for 212C, not concomitant to adjustment, but stand-alone. Okay, so it's the marriage that makes this different? Yes. Adjustment through the marriage. Absolutely. Which is why the judge was compelled to explore these issues with the evidence he had before him. But then we're getting back to whether or not he gets 212C. The judge said no and it went no further. Then the Board just took it sideways for other reasons. We have to return to this issue and I would hope this Court would do so because I I would I think that the Court  be a would provide a different form of review in dealing with Nevada revised statutes. What so what is it that this goes back to what what issue are you saying we should send back? The issue, first of all, of whether or not he has been he has served a five-year prison sentence. Hopefully the Whether he's an aggravated felon He is an aggravated felon in a removable sense but whether or not he has served five years imprisonment. He served he served an eight-year sentence but only three years and change in prison. And then there was other forms of confinement of a civil nature. And then there's probation after the fact. But prison is prison. 212C is barred for five years service of imprisonment on Mother's Day. And that's what the statute clearly says. The clear wording of the statute does not include other forms of constraints on liberty and other and other forms of confinement. The words that are found in the present definition of conviction at 101A48A and B. And for that reason this court can really nail this case shut by finding he hasn't been in prison for five years. Once that happens the board then has to remand back to the immigration court to allow him to adjust status after the government has been sitting on this immigrant visa petition for over a year adjudicates it. Unfortunately I haven't been able to go into district court on mandamus. I can only do so much. Let me ask you did the BIA never address this Azzurin matter? Never. Ever. It had three companion cases to interpret post-St. Cyr regulations. It got very excited about one and got rid of the case. It ignored one that is directly on point after it addresses the issue of whether or not he spent five years in prison. Okay. Thank you, Your Honor. Thank you, counsel. We appreciate the arguments in the case. The case is ordered and submitted and that concludes the court's calendar for this morning.
judges: Schroeder, Bybee, Wu